Good morning, ladies and gentlemen. Judges Schroeder and Bumate and I welcome you to the Ninth Circuit. We have two cases on for argument today, and some people are appearing by video. And so I will call the cases in the order that they're on the calendar, except I'm going to get some submitted matters out of the way first. And if you are here for argument, there's a designation of time by your case. And if you are the petitioner or appellant, that is your total time. So it would include any time that you want to reserve for rebuttal. So, basically, expect to be kept to your time. However, if any of my colleagues or I are asking you questions, you don't need to ask permission to go over time if the judges are asking you questions. I know that you consider oral argument your time and you came here to say certain things, but we also consider it our time to ask you any questions that we need to have answered prior to making a decision in your case. The clock counts down and then it goes up. So just because it keeps going doesn't necessarily mean I gave you extra time. That means you've moved into overtime and you might get called on time. Now, the first submitted matter is Cardona Hernandez v. Merrick Garland, 22-410. That's submitted on the brief, submitted as of this date. The next submitted matter is Pitawee v. Merrick Garland, 22-67, submitted on the brief, submitted as of this date. Then we have Singh et al. v. Merrick Garland, 22-603, submitted on the brief, submitted as of this date. And lastly, we have Gill v. Merrick Garland, 22-783, submitted on the brief, submitted as of this date. So the first matter on for argument today is Singh v. Merrick Garland. That's 22-171. And I think we have one party here and one on video, or do we have both? Both on video. Both on video. Okay. So can you hear us okay? Perfectly, Your Honor. Okay. Well, let us know if you have any issues going in. So each side has 10 minutes. So we're ready to begin. Good morning. May it please the Court, I'm Robert Jobe, and I'm appearing on behalf of the petitioner, Gurwinder Singh. When this case was before the BIA, we argued that the immigration judge had committed a variety of errors, which necessarily affected his conclusion that Singh could safely and reasonably relocate to another part of India. We argued that the immigration judge had misapprehended certain facts. In particular, the immigration judge mistakenly believed that the bottle party was the exclusive attacker, the exclusive party responsible for the two attacks perpetrated against Mr. Singh, and that the BJP, a national party, had no involvement in those attacks. We argued that the immigration judge had erroneously deemed critical parts of Singh's testimony not credible, that the immigration judge had minimized Singh's involvement with the Maan party, saying that he would infer only that the respondent may have worked or assisted the party in minor details, such as bringing food to events. Sitting himself, he testified that whenever there was any program taking place, he said, I would go and inform people about the party. And then finally, the immigration judge found not credible Singh's testimony about police activity against him in India. And the judge said that that portion of his testimony carries no weight, no weight at all. So just so that I understand, the ultimate ruling was that he didn't show past persecution, but even if he did, he could safely relocate. Is that right? Yeah. Well, the immigration judge found him not credible and then offered those alternative rulings that even if he were credible, the government would have rebutted the presumption. Well, he didn't quite say it that way. He said even if he had established past persecution, the government would have rebutted the presumption. Well, is there anything in the record to suggest that the Congress party rather than the BLP party has or is likely to attack Mr. Singh because of his membership in the Maan party? Well, Your Honor, this case was decided by the immigration judge two and a half months before Singh v. Whitaker. And in Singh v. Whitaker, the court held that in considering the totality of the circumstances, the immigration judge has to account for the persecution the applicant may face outside Punjab from local authorities or other actors, any other actors based on his future political activities. And because the case was decided before Singh v. Whitaker, the immigration judge didn't do any of that. And that's one of the other issues. But the BIA referred to Singh v. Whitaker. Yeah, it referred to it, but it didn't actually engage in the analysis that Singh v. Whitaker requires. In fact, the BIA didn't. Well, how so? I mean, so the BIA said that BJP only targets high-level militants. So are you saying that your client is a high-level militant? No, that's not quite what the board said, Your Honor. If you look at the administrative record at page four, this is the entirety of the board's analysis. It mentions our argument that, you know, we argued that he's unable to locate because he's a member of the Maan Party and he was threatened, it says, by the BJP and Akali Dalbal. It doesn't say he was ever attacked by the BJP, which he was. But then in analyzing relocation, it says, insofar as he claims that the central government would seek to locate and harm him outside of Punjab, the evidence indicates to the contrary, that they would only pursue these high-level militants. But our argument was never that the government, the BJP central government, is going to target this guy and seek him out. They're going to search for him based on whatever activities he was engaged in in Punjab. That's not even the basis of his past persecution claim. Our claim is that although India generally protects free speech, there's one large exception, and that is you can't really challenge the territorial integrity of the nation. This is a nation that was born in the partition, and as a result, the one exception, one thing that's not tolerated is separatist speech. And our claim is that in just what happened to him in Punjab, because this man supports a separatist political party, he was targeted not by the government. He was targeted by supporters of two different parties, one local, but one national, and he was targeted by the BJP. If he relocates to some other part of India, the question is, will he be able to continue engaging in this same kind of secessionist speech or support for Akali Dalman without encountering similar problems? So is it considered treason to advocate for that? No, it's not considered treason at all, but it's just – it's anathema to India's political culture. And as a result, people who engage in this kind of speech are attacked. Can I ask – so the distinction you're saying is not that the BJP government will attack him. It's that BJP political supporters will attack him. Yes, Your Honor, and that's exactly what happened in Punjab. He was attacked not by the government. He was attacked by BJP supporters. And if he relocates – Oh, then what's the evidence that their BJP supporters attack low-level man party members outside of Punjab? Well, as a threshold matter, Your Honor, the burden of proof on that question is on the government. And neither the board nor even the government in its brief nor the immigration judge cited the regulation that specifically says that when an individual establishes past persecution, internal relocation is presumed to be unreasonable. This is the government's burden. They have to show that he would be safe, that he would not have a well-founded fear of persecution in some other part of India. And our point before the board is that neither the immigration judge – the immigration judge never considered this question. It never analyzed this question. Well, do you agree that the BIA was correct that the BJP government would not likely attack him though? I think it's unlikely. But again, one can have a well-founded fear even if there's a 10 percent chance that you would be persecuted on account of your political opinion. I don't think it's impossible. So based on this record, we see that there are many instances where people, low-level individuals have been arrested, not by the BJP necessarily, but by state governments for engaging in nonviolent promotion of secessionist causes. And the question is – we know that happens in Punjab. So the question is, has the government adduced any evidence to show that if this individual continues to engage in similar activities in some other part of India, would the local authorities in the place of relocation treat that individual any more gingerly than he was treated in Punjab? Mr. Job, may I – this is Judge Schroeder. May I ask you if I understand that the IJ found that there was no persecution, past persecution, and the BIA assumed without deciding that there had been past persecution, what do we do with that? Don't we have to send this – even if we agree with you, don't we have to send it back to consider past persecution? I think you have to send it back because the board's attempted work around here, it didn't solve the problem. Because the immigration judge's credibility findings, they went well beyond whether the police in Punjab are willing and able to protect him. By not grappling with the adverse credibility finding, the board left unanswered whether there was police activity against him. Did – were there police in Punjab that came looking for him as he testified? They never resolved that question. They also left unresolved the extent of his political activity on behalf of a colleague of Ahmad. And you can't consider the totality of the circumstances without addressing those questions, and the board never addressed them. Instead, it tried to shortcut this by making an assumption that there was past persecution, but that assumption doesn't – it didn't allow them to consider the totality of the circumstances. Your time's expired. I'll give you one minute for a rebuttal. Thank you, Your Honor. All right, we'll hear from the government. Good morning. Good morning, Your Honors, and may it please the Court. My name is Krishna Patel, and I represent the United States Attorney General. This case, like many others with similar facts, boils down to whether a low-level political party member can internally relocate within India to avoid harm based on his political. And the burden of proof here on the government is whether substantial evidence supports the agency's findings that it's both safe and reasonable for Mr. Singh to relocate outside of Punjab and avoid the harm that he fears. And here, the agency presented plenty of evidence to support their findings. At the outset, as a preliminary matter, credibility is not at issue here. The BIA did not decide credibility and presumed, like past persecution, that the petitioner's testimony was credible. And also, the IJ did not find the petitioner not credible. On AR-157, the IJ says that there is enough evidence here and that he will grant sufficient weight to the petitioner's testimony, even though he found certain deficiencies within the petitioner's testimony. So what is your response to Mr. Singh's assertion that his membership in the Man Party and its demands for a Khalistan state are opposed by the Congress Party throughout India? As a preliminary matter, I would say that Mr. Singh, while he joined the Man Party, and he is, quote, familiar with the term Khalistan as he testified, Sikh separatism was not an impetus for him joining the Man Party. Mr. Singh testified on AR-99 through 101 that he cleaned up after events. He distributed food and water, that he told other people about the party, and that he joined the party because he believed in its advocacy for farmers' rights and for social justice. And I think that it is an overstatement of the record to presume that Mr. Singh would be a fervent Sikh separatist or engage in advocacy for Khalistan when there is no testimony in the record that indicates that he ever did that or that he intends to do that upon return. This is very different from the petitioner, Narendra Singh, who was arrested while shouting pro-Khalistan slogans. And that's simply just not the case here. So I recall, and I guess where does this fit in? He claims he only speaks Punjabi fluently, and it will make it difficult for him to find employment if he relocates to India away from the Punjab. Was that part of his claim, why he couldn't relocate? Or was, as Mr. Jobe's saying, he can't relocate safely anywhere because of his support of a separate state? I think his language goes to whether it would be reasonable to expect him to relocate, whether he would be able to settle somewhere else outside the state of Punjab. And the record shows that there are several states within India where Punjabi is one of the majority languages. And I think that there are five such states, Haryana, Delhi is a major city where Punjabi is spoken. And the immigration judge delved into this when he, in analyzing the record, indicated that there are cities and states where there are flourishing Sikh communities where Mr. Singh can continue practicing his culture, his religion, and speak his language and relocate. And importantly, Mr. Singh was able to relocate to the United States, find work, and live here despite not speaking the language. So as to the advocacy for the Man Party, I don't think there's anything in the record that shows Mr. Singh can't continue based on his same claim, that he would continue being a member of the Man Party that participates in events and activities. He would engage in non-violent action. And therefore, the agency was reasonable in concluding that he would not come to the attention of local authorities in these states, the central Indian authorities. And outside of Punjab, he would not be subject to long-arm enforcement by the Punjabi police or further persecution by the Badal Party, which is regionally limited to Punjab. Well, now, what about his dad is also a member, right? His dad's a higher-level person. What was the evidence in the record about his dad? Well, Your Honor, his dad remains in Punjab. And Mr. Singh testified that his dad, as an elderly member, had stopped attending too many rallies, though he is a longstanding supporter of the Man Party. And Mr. Singh testified that his dad was never physically harmed, though he is not aware of it personally. He thinks his dad may have received some threats in the past due to his association with the Man Party, but that was localized within Punjab. There's no indication that his father has left Punjab or there was any severe harm to his father due to his continued affiliation with the Man Party. What's your response to the argument that the BIA erred because it was analyzing BJP's centralized government versus BJP's political workers in the relocation analysis? So I think here the BIA correctly identified the issue by engaging in the exact analysis that Singh v. Whitaker required. It assessed whether Mr. Singh would be at harm or would be at risk of harm by local actors in the state of relocation, by his former persecutors, the localized members within Punjab, and also the central Indian government, which as a shortcut is the BJP. And so the board correctly identified and applied the presumption that Mr. Singh would be at risk of nationwide persecution, assuming that he had established past persecution by government actors. And therefore, the board looked at reports and assessed that in central India or as part of the central government, unlike within the conditions of Punjab, BJP is simply not interested in these low-level members. They're interested in chronic offenders, criminals, militants, and suspected terrorists. And the IJ also makes this distinction. But what about the distinction, not the BJP government, but BJP political supporters? I think BJP political supporters for persecution would have to be condoned by the government. And so here we don't have evidence in the record that the BJP outside of Punjab would engage in these sorts of things. There's not low-level harassment in the record outside of the state of Punjab in the record anywhere, including, for example, in the State Department report where there is documented instances of violence against other minority parties. There's not a single reference to harm in other states by individuals against man party members specifically. And so the IJ notes kind of the special conditions that exist in Punjab where the BJP is in a political alliance with the Badal Party. And therefore, perhaps its members are more galvanized to take aggressive action against the man party, which is a specific electoral combatant of that BJP and Badal Party coalition. But that doesn't exist anywhere outside of the state of Punjab. And therefore, it's just there is no evidence here that Mr. Singh would be subject to harm by these BJP political party supporters. And so despite the fact that this case came out before Singh v. Whitaker, the IJ clearly identifies the issue correctly on AR-62 and determines whether there is a risk of harm from local actors, central government, and the former persecutors. The agency conducts an individualized analysis tailored to Mr. Singh's specific circumstance. Not to the circumstance of general man party supporters, but Mr. Singh specifically, a nonviolent, low-level political party supporter who joined the party for farmer's advocacy and social justice, not to become a fervent advocate for separatism. And taking these specific circumstances into account, the agency looked at the record and concluded that there simply isn't a sufficient risk of harm and it would be safe for Mr. Singh to relocate. Not only would it be safe, but it would be reasonable. He has cultural ties elsewhere in the country. He is young and healthy and has an employment history such that he would be able to hopefully continue finding employment. And as to the fact that India generally respected free speech, but not to separatism, again, I would emphasize that this is just an overstatement of the existing record. If there are no further questions, I would ask that the court deny the petition of review and conclude. There don't appear to be further questions. Thank you. Thank you. Mr. Job, one minute. I have one question, Mr. Job. I'm looking at the opening brief, and I don't see this distinction that you're trying to draw between BJP centralized government and BJP political supporters, and that's why the BIA error. I don't have a quick cite for you on that, Your Honor, but I can provide one in a 28-J letter. If there is one, yeah. Yeah, there is. But if you look at the board's decision, it's a shame that government counsel wasn't there to write the opinion for the board because if you look at the board's decision, it consists of about three sentences. First, it says the central Indian government would not seek this person out because he's not high profile. Then it says the bottle party, the party that it believed the immigration judge exclusively was responsible for attacks against him, does not have a majority in any state or a significant presence in any other part of India. Thus, based on those two sentences, the board says, the evidence indicates the respondent would not be targeted by the central authorities, the bottle party, or the local authorities. It never actually analyzes the question that's presented by Singh v. Whitaker, and the government counsel is asking this court to engage in factual finding that should have been done in the first instance by the immigration judge but wasn't because Singh v. Whitaker had not yet been decided. And when we raise this issue before the board, it's the entirety of our brief to the board. The board ignored it, and instead it just parroted what the immigration judge had done before. Because the agencies never weighed in on this question, the court of appeals should not even be entertaining these factual arguments that are largely being put forth by government counsel now, but were never ever the subject of the decision by the immigration judge or the board. Alright, there don't appear to be additional questions, and your time has expired. Thank you both for your argument today. This matter will stand submitted.
judges: SCHROEDER, CALLAHAN, BUMATAY